UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jack Ferranti, # 45299-053, | ) C/A No. 5:13-3472-TMC-KDW |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | ) |
| Kenny Atkinson, Warden, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Jack Ferranti ("Petitioner"), a federal prisoner, filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Motion for Summary Judgment. ECF No. 13. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 14. Petitioner filed a Response in Opposition to Respondent's Motion and Respondent filed a Reply. ECF Nos. 29, 30. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion be granted.

I.      Factual and Procedural Background

Petitioner is currently incarcerated at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). He was previously incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI-Ft. Dix") between June 19 and September 18, 2012, which is where the incident that resulted in the prison disciplinary action involved in this case took place. ECF No. 1. In his Habeas Petition he alleges that on July 15, 2015 Counselor J. Dixon

("Dixon") assaulted him and "tried to cover his misconduct by alleging that [P]etitioner committed three distinct infractions: assaulting any person (Dixon), refusing to obey an order, and insolence towards a staff member." ECF No. 1 at 2. Petitioner alleges that there was insufficient evidence for the finding that he committed a minor assault and that the Disciplinary Hearing Officer ("DHO") was not impartial, and he asks this court to order that the incident report be expunged from his record and his good conduct time restored. *Id*. at 4-6.

    A.    The Incident Report and Preliminary Procedure

According to an incident report prepared by a Federal Bureau of Prisons ("BOP") counselor at FCI-Ft. Dix, on July 15, 2012, at approximately 9:45 a.m. at FCI-Ft. Dix, Dixon was verifying that inmates sleeping on lower bunks had the requisite pass to do so. ECF No. 13-3 (Incident report).[1] Dixon called Petitioner to the staff alley to ask if Petitioner had gotten a lower bunk pass and whether he had visited health services. *Id*. Petitioner became argumentative, and, after he was told to visit health services the following day, Petitioner said in a loud voice, "No, you listen to me now." *Id*. Petitioner then walked out of the area and back to his cell with Dixon following him and asking for his inmate ID card. *Id*. Dixon reported that Petitioner slapped his ID card into Dixon's hand, and then, standing nearly nose-to-nose with Dixon, aggressively stated, "let's go." *Id*. According to Dixon's report, he repeatedly warned Petitioner to stop yelling and back away as Petitioner was in Dixon's personal space. *Id*. Dixon reported that he repeatedly asked Petitioner to follow him out of the cell, but Petitioner said, "hit the deuces."[2] *Id*. According to

---

[1] Petitioner alleges that he and Dixon had been at odds before the confrontation in Petitioner's cell over Petitioner's refusal to pay toward a fine that was imposed on him in connection with his criminal sentence and over Dixon's decision to send some of Petitioner's personal property back to his relative outside the prison. Pet'r's Resp. 1-2, ECF No. 29. Respondent notes that these "facts" were not included in the § 2241 Petition under review, but argues that they make no difference to the ultimate question in this case: whether there is some evidence to support the DHO's decision. Resp't Reply 1-2, ECF No. 30.

[2] According to Respondent,

2

Dixon, he observed that Petitioner's body stance was tense and that he was speaking in an argumentative, loud, nervously rapid tone which made Dixon feel personally threatened and resulted in Dixon's calling for assistance from other staff. *Id*.

Dixon reported that when an officer arrived to the scene, Dixon ordered Petitioner against the wall so that Dixon could perform a pat-down search for his own safety. *Id*. Dixon stated that Petitioner did not obey the order, but, rather, stood his ground, whereupon Dixon then reached out to grab Petitioner's upper arm to guide him to the wall so that a pat-down search could be conducted. *Id*. According to Dixon's report, Petitioner turned around and with both of his hands grabbed Dixon's chest, and Dixon then pushed Petitioner into the wall in order to free himself of Petitioner's hold. *Id*. Dixon stated that he was able to get out of Petitioner's grip with the officer's assistance and that he then placed Petitioner's hands behind his back, put hand restraints on them, and then escorted Petitioner out of the cell. *Id*. Dixon's version of the events was substantially confirmed by the written report of Officer Ward, the corrections officer who responded to Dixon's request for assistance, ECF No. 13-7 at 8, and by the investigation report issued by Operations Lieutenant D. Lampley, ECF No. 13-3 at 3.

Petitioner received a copy of the incident report at approximately 6:58 p.m. on July 15, 2012. ECF No. 13-3 at 1. The report charged him with the prohibited acts of Assaulting Any Person (Minor Assault) (Code 224), Refusing to Obey an Order of Any Staff Member (Code 307), and Insolence Towards a Staff Member (Code 312), and, as discussed above, contained a

---

"Hitting the deuces" refers to a security measure whereby BOP staff can pick up a phone and tap the number 2 three times. This procedure alerts other staff that the employee who has "hit the deuces" is in a compromised situation with respect to an inmate—any staff in the area will immediately report to the area in order to assist the endangered employee. Accordingly, it is a tacit threat or challenge for an inmate to tell a staff member to "hit the deuces" if he or she really feels threatened.

Mot. Summ. J. 4 n.2.

description of the incident and of the prohibited acts with which he was being charged. *Id*. An investigation was conducted and the matter referred to the Unit Discipline Committee ("UDC"). ECF No. 13-3 at 2. The UDC hearing was conducted on July 18, 2012. *Id*. At the UDC hearing, Petitioner stated that he disagreed with Dixon's portrayal of the incident. Petitioner stated that he was not guilty of the charges and that he only had an argument with Dixon over whether Petitioner has a lower bunk pass. He stated that Dixon "started the argument" and when Petitioner said "do what you gotta do" and left Dixon's office, Dixon came back to Petitioner's room and asked for his prison identification. *Id*. Petitioner told the UDC that the argument escalated and Officer Ward came to the area and he and Dixon grabbed Petitioner's arms and pushed him into a locker. Petitioner stated that he "told Ward to tell Dixon to get off me. That's when I was cuffed." *Id*.[3] Following the UDC hearing, the matter was referred to a DHO because of the nature of the charges. *Id*.

### 2.     The DHO Hearing and Rehearing

On July 18, 2012, Petitioner was given written notice of a hearing before the DHO as well as information about his rights at the DHO hearing. ECF Nos. 13-4, 13-5. Petitioner asked for assistance from a staff member and requested Unit Manager Whritenour. ECF No. 13-4. He also asked that two witnesses, inmates Hodgkinson and Poitevien,[4] testify in his defense at the hearing. *Id*. Inmate Poitevien declined to provide a statement or act as a witness, but, though unavailable to testify personally, Inmate Hodgkinson did submit a written statement to be considered at the hearing. ECF Nos. 13-6, 13-7 at 10.

---

[3] This is essentially the same version of events that Petitioner gave to an investigator, D. Lampley, whose July 15, 2012 report is contained in the same exhibit to Respondent's Motion. *See* ECF No. 13-3 at 3.

[4] Petitioner identified this inmate as "Drey" or "Dread." ECF Nos. 13-4, 13-6.

4

The DHO conducted a hearing on August 13, 2012, at which Petitioner was present. ECF No. 13-7 at 1-4. Staff representative Whritenour assisted Petitioner at the hearing, and Inmate Hodgkinson's statement was entered into evidence. ECF No. 13-7 at 1. In his statement, Hodgkinson confirmed that Dixon entered the room, "went directly to [Petitioner] and was face-to-face" with him. *Id*. Hodgkinson and another inmate were ordered to vacate the room, and Hodgkinson stated that he saw Dixon and another officer force Petitioner into his locker and handcuff him. He also wrote that "[t]o my knowledge there was no reason for this type of force." *Id*. In his own hearing testimony, Petitioner again denied the charges, stated that Dixon "was screaming at me and in my face" and that was why Petitioner told Dixon to "step back." *Id*. at 1. Petitioner confirmed that Dixon ordered other inmates out of the area and "then hit the deuces," at which time Officer Ward responded to the scene. *Id*. Petitioner stated that Dixon then pushed him against the locker and that Dixon and Ward handcuffed him. Petitioner denied that he ever "put [his] hands on Dixon." *Id*. The DHO also had before him Dixon's incident report, *id*. at 5, a written report from Lieutenant Lewars, *id*. at 6, a written report from Dixon to Lewars, *id*. at 7, Officer Ward's written statement, *id*. at 8, a written report from Lieutenant Weaver, *id*. at 9, and records from the FCI-Ft. Dix medical department that contained notes about what Petitioner, Dixon, and Ward communicated to staff about the incident, *id*. at 11-14.

After consideration of all the evidence, the DHO found that Petitioner committed the prohibited acts of Assaulting Any Person (Minor) and Insolence Towards a Staff Member; the DHO did not find that Petitioner had refused to obey a direct order. ECF No. 13-7 at 2. The DHO imposed sanctions including disallowance of twenty-seven days of good-conduct time, disciplinary segregation for fifteen days, and loss of commissary, email, phone, and visitation privileges for thirty days. *Id*. at 4. The DHO provided his decision through a written report in

5

which he discussed his findings and listed the evidence relied upon and explained his reasons for the sanctions imposed. ECF No. 13-7. A copy of this written decision was delivered to Petitioner on September 11, 2012. ECF No. 13-7 at 4. Petitioner then appealed the DHO's decision through the BOP administrative remedy process to the Regional Office, and on March 1, 2013, it was remanded back to the institution for rehearing. ECF Nos. 13-8, 13-9. Petitioner was transferred to FCI-Edgefield on September 18, 2012. Pet'r's Resp. 7, ECF No. 29.

On May 21, 2013, the DHO conducted a rehearing as instructed by the Regional Office. ECF No. 13-10. Petitioner was present, indicated he was ready to proceed, and was again advised of his rights. *Id*. He again denied the charges lodged against him, but he elected not to have a staff representative at the rehearing. He requested that inmate Hodgkinson appear as a witness on his behalf, but was informed that Hodgkinson would not be able to appear in person due to logistics, so the written statement from Hodgkinson was again entered in evidence. *Id*. In his rehearing testimony as summarized by the DHO, Petitioner stated that he "did grab ahold to Dixon but not like Ward and Dixon said," rather, Petitioner stated that he held on to Dixon because he (Petitioner) was bent over backwards against a locker. *Id*. After considering all the evidence submitted at the rehearing, the DHO found that Petitioner committed the prohibited act of Assault (Minor), but dismissed the charges of Refusing an Order and Insolence Towards a Staff Member. *Id*. The DHO imposed the following sanctions against Petitioner: disallowance of twenty-seven days of good-conduct time, disciplinary segregation for fifteen days, and loss of commissary and visitation privileges for thirty days. *Id*.

The DHO prepared a written report of the rehearing on June 1, 2013, detailing his decision, the evidence he relied upon, and the reasons for sanctions he imposed. ECF No. 13-10 at 3-4. Petitioner received a copy of this written decision on June 24, 2013. *Id*. at 4. Petitioner appealed

the rehearing decision through the administrative remedy process, and the disciplinary action and sanctions were upheld by the Regional Office. Mot. Summ. J. 8, ECF No. 13. Although Respondent indicated in his Motion that Petitioner's appeal is still pending with the Central Office, he stated that because the time period for a response from the Central Office has passed, Petitioner "may consider the absence of a response to be a denial at that level." *Id*. (citing to BOP PS 1330.17 (Administrative Remedy Program)).

With the filing of this Petition for Writ of Habeas Corpus, Petitioner seeks to overturn his administrative disciplinary action adjudication, to have the disciplinary action expunged from his records, and to have his twenty-seven days of good-conduct time restored. Petitioner contends that his constitutional rights to procedural and substantive due process were violated because there was insufficient evidence for the finding that he committed a minor assault. He contends that the DHO committed perjury in his report of the decision when he wrote that Petitioner testified that he "grabbed Dixon," that the decision is based on fabricated evidence, and that the DHO was not impartial because of "the nature of the alleged infraction" and because he refused to dismiss the assault charge even though it allegedly rested on the same set of facts as the other two charges that were dismissed for want of proof. Pet. 4-5, ECF No. 1.

II.     Standard of Review

    A.     Motion to Dismiss

Pursuant to Rule 12(b)(6) a motion to dismiss may be granted when, construing allegations in light most favorable to plaintiff and assuming facts alleged in the complaint to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In deciding a Rule 12(b)(6) motion, the court can rely only upon the allegations in the complaint and those

7

documents attached as exhibits or incorporated by reference. *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court must construe factual allegations in the nonmoving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (noting that in rule 12(b)(6) analysis, court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217-18 (4th Cir. 1994).

    B.    Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus

1.  Section 2241 and Its Exhaustion Requirement

Generally, a habeas petitioner must present his claims to an appropriate forum before filing his petition in this court. This requirement of exhaustion is largely unavoidable. *Ex parte Hawk*, 321 U.S. 114, 117 (1944). "Unlike petitions brought under [28 U.S.C.] § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters, sentence computation, calculation of good time credits, prison disciplinary actions, and transfers." *Clemmons v. South Carolina*, No. 0:08-607-RBH, 2008 WL 2845636, *1 (D.S.C. July 18, 2008).

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Jud. Cir. Ct.*, 410 U.S. 484, 490-91 (1973) (requiring

exhaustion in § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief") (internal quotation marks omitted). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Respondent does not dispute that Petitioner exhausted his available administrative remedies. ECF No. 13 at 3.

III.   Discussion

   A.   Due Process

Petitioner contends that his procedural and substantive due process rights were violated by the administrative disciplinary action proceedings because the DHO misstated his testimony and relied on fabricated evidence from the BOP counselor and reporting and investigating officers. Pet. 1, 5, ECF No. 1; Pet'r's Resp. 7-13, ECF No. 29. Respondent moves for summary judgment on the Petition, alleging that there are no genuine issues of material fact that would preclude a finding that Petitioner received all process that was due to him in connection with the hearing and rehearing of the administrative disciplinary charges that were filed against him, and that Petitioner's stated disagreements with the DHO's credibility determinations made in reaching his decision do not create genuine issues that would preclude summary judgment. Mot. Summ. J. 9-10, 13-15, ECF No. 13; Reply to Pet'r's Resp. 2, ECF No. 30.

When a prisoner faces the possible loss of good-conduct credits in prison disciplinary proceedings, he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U.S. at 564-71. Furthermore,

10

substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Here, Petitioner, who was sanctioned with the loss of good-conduct time and temporary loss of certain privileges, was given advance written notice of the charges more than twenty-four hours before his August 13, 2012 disciplinary hearing. ECF No. 13-4. Petitioner was offered the opportunity to present evidence in the form of documents or witnesses, and to have the assistance of a staff representative. ECF No. 13-5. Petitioner used a staff representative at the original hearing, but chose not to do so in connection with the rehearing. *Id*. He called two fellow inmates as a witnesses, *id*.; however, one inmate declined to testify and the other elected to submit a written statement rather than appear personally. ECF No. 13-7. The hearing record reflects that Petitioner appeared at the hearing and gave a statement. *Id*. Applying the *Wolff* criteria to this case, it appears that Petitioner received all the process due him in connection with his disciplinary hearing.

     Insofar as the rehearing process is concerned, the matter that was re-heard was the same incident that was the subject of the original DHO hearing. As a result, there was no need for the BOP to appoint another investigative officer or to hold another UDC hearing. Petitioner was given advance written notice of the charges lodged against him more than twenty-four hours before the rehearing because he first received a copy of the incident report on July 15, 2012, ECF Nos. 13-4, 13-7; he was informed by the Regional Director in a BP-10 response dated March 1, 2013 that the matter was being remanded back to the institution for a rehearing, ECF No. 13-9; he was charged with the same three code violations on rehearing, ECF No. 13-10 at 1; and Petitioner informed the DHO he was ready to proceed with the rehearing. *Id*. Also, as had been the case with the original DHO hearing, Petitioner was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative. *Id*. Petitioner called inmate

Hodgkinson again to testify at the rehearing, but he was not able to appear personally, and his written statement was again introduced into evidence by Petitioner. *Id*. The record of the rehearing further reflects the decision of the DHO, the evidence he relied upon, the reasons for his decision, and the sanctions he imposed. *Id*. at 2-4. Thus, the undersigned finds that Petitioner received all process that was due to him in connection with both the disciplinary hearing and rehearing. *See Wolff*, 418 U.S. at 556 (a prisoner is not entitled to the "full panoply of rights" that are present in a criminal prosecution). Accordingly, Respondent's Motion for Summary Judgment should be granted insofar as Petitioner claims violations of procedural due process in connection with the disciplinary hearing and rehearing.

      B.      Sufficiency of Evidence

Petitioner also argues that the evidence was insufficient to support his conviction, and thus his substantive due process rights were violated. Petitioner asserts that the evidence that the DHO relied on for his decision was fabricated and the DHO, himself, misrepresented Petitioner's testimony at the Rehearing. According to Petitioner, he never testified that he grabbed "ahold" of Dixon and he maintains that he never touched Dixon. Petitioner alleges that this "perjury" by the reporting witness and by the DHO shows that the DHO was not impartial and that his decision is not supported by "some evidence." Pet. 5, ECF No. 1; Pet'r's Resp. 10, ECF No. 29. Respondent contends that, despite Petitioner's claims of innocence and his personal belief that the DHO reached the wrong conclusion, there was sufficient evidence to support his disciplinary conviction, thus requiring entry of summary judgment on Petitioner's sufficiency of the evidence claim. Reply to Pet'r's Resp. 2, ECF No. 30.

The "some evidence" standard that the court employs in considering this matter is a lenient one. The DHO's decision is to be upheld when supported by no more than "a modicum of

evidence," and the standard is met if there is any evidence in the record that could support the decision. *Superintendent, Mass. Corr. Inst.*, 472 U.S. at 455-56. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Id*.

Having reviewed the record and the parties' arguments, the undersigned finds that "some evidence" exists to support the DHO's decision. In his original decision and in his decision on rehearing, the DHO explained that, in addition to the incident and investigation reports prepared by Dixon and Lampley on July 15, 2012, he also considered a written statement prepared by Officer Ward, and medical records recounting examinations of and statements made by Petitioner, Dixon, and Ward soon after the subject incident in Petitioner's prison room. ECF Nos. 13-7 at 3, 13-10 at 3. The DHO also considered Petitioner's testimony and statement to the investigator denying that the confrontation between Dixon and him occurred as Dixon described it, as well as the statement from Petitioner's fellow inmate, who stated that Petitioner was not being argumentative and that there was no reason for the counselor and responding officer to use the force against Petitioner that they used. *Id*. However, the DHO stated that he relied on the "greater weight of evidence in the officer's eyewitness account of the incident and the supporting documents" to find that Petitioner committed the charged conduct of "Assault (Minor)." *Id*. at 2.

It is not this court's prerogative to make an independent assessment of the credibility of the witnesses or to weigh the evidence. *See Rojas-Parra v. Warden*, No. 1:13–1581–TMC, 2014 WL 2548352, \*\* 1, 5, 7 (D.S.C. June 6, 2014) (citing *Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990)). Whether or not Petitioner testified at the rehearing that he grabbed "ahold" of Dixon as the

DHO summarized is irrelevant to this court's determination of Respondent's Motion and does not establish a genuine dispute as to any material fact because, even if the court were to ignore that portion of the DHO's report of the Rehearing, there is still some evidence to support the decision. Moreover, other than his own unsupported personal opinion and statements expressing it, Petitioner provides no competent evidence to support his contention that the DHO was not impartial. The most that can be said of his contentions is that Petitioner disagrees with the DHO's fact-finding and credibility determinations; this does not prove any constitutional violation requiring habeas relief. Because there is some evidence to support the DHO's decision, there is no competent evidence supporting Petitioner's claim that the DHO was not impartial, and the requirements of due process were satisfied, the DHO's decision under review should be upheld. Here, Petitioner fails to show that there is any genuine dispute as to any material fact and, therefore, Respondent is entitled to summary judgment as a matter of law.

IV.    Conclusion

Based on the foregoing reasons, the court recommends that Respondent's Motion, ECF No. 13, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

June 24, 2014                                                                Kaymani D. West
Florence, South Carolina                                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**